# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB-PGL |
| This Document Relates To: | DIRECT FILED COMPLAINT [& JURY DEMAND] PURSUANT TO MDL ORDER NO. 12 |
| JUDITH WILSON, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | |
| PROGRESS SOFTWARE COMPANY; HUMANA, INC.; CENTERWELL HOME HEALTH SERVICES, LLC; TRILOGY HOME HEALTHCARE NE FL., INC.; TRILOGY HOME HEALTHCARE SW FL., INC.; and KIRKLAND & ELLIS LLP, | |
| Defendant(s). | |

Plaintiff Judith Wilson ("Plaintiff") individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to herself and on information and belief as to all other matters, brings this Class Action Complaint against Defendants Progress Software Corporation ("PSC"); Humana, Inc. ("Humana"); CenterWell Home Health Services, LLC ("CWHH"); Trilogy Home Healthcare NE Fl., Inc., and Trilogy Home Healthcare SW Fl., Inc. (collectively, "Trilogy" or "Trilogy Home Healthcare"); and Kirkland & Ellis LLP ("Kirkland" or "Kirkland & Ellis") (collectively, "Defendants"), and in support thereof alleges as follows:

## NATURE OF ACTION

1.      This Complaint is being directly filed into this MDL proceeding pursuant to the Court's MDL Order No. 12.

011175-35/2647715 V1

2.      Upon information and belief, Plaintiff's and Class Members' Private Information was compromised as a result of a security vulnerability in the MOVEit software, as alleged in Plaintiffs' Omnibus Set of Additional Pleading Facts (ECF No. 908) and incorporated and re-alleged herein.

3.      Defendants used Progress's MOVEit software to transmit Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (collectively, "Private Information" or "PI") of individuals, including Plaintiff and Class members. According to the Federal Trade Commission ("FTC"), PII is "information that can be used to distinguish or trace an individual's identity, either alone or when combined with other information that is linked or linkable to a specific individual."[1] PHI is deemed private under the Healthcare Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.*, as well as multiple state statutes. According to the U.S. Department of Health & Human Services ("HHS"), PHI "is information, including demographic data," that relates to: "the individual's past, present or future physical or mental health or condition," "the provision of health care to the individual," or "the past, present, or future payment for the provision of health care to the individual," and that "identifies the individual or for which there is a reasonable basis to believe it can be used to identify the individual." Individually identifiable health information includes many common identifiers (*e.g.*, name, address, birth date, SSN)."[2]

4.      As used throughout this Complaint and previously defined in the paragraph above, "Private Information" is further defined as all information exposed by the Data Breach, including

---

[1] *See Federal Trade Commission Privacy Impact Assessment: Redress Enforcement Database (RED)* at 3, n.3, FTC (June 2019), https://www.ftc.gov/system/files/attachments/privacy-impact-assessments/redress_enforcement_database_red_privacy_impact_assessment_june_2019.pdf [https://perma.cc/VM2Z-GC54].
[2] *See Summary of the HIPAA Privacy Rule*, HHS, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html (last visited Dec. 19, 2021) [https://perma.cc/77KL-PC46].

all or any part or combination of name, address, birth date, SSN, PHI, driver's license information (including license number, state, home address, dates of issuance or expiration), telephone number, email address, tax identification number, credit card number, or dispute documents with PII (such as images of government-issued identifications).

5.     Plaintiff brings this class action against Defendants for their failure to properly secure and safeguard Plaintiff's and other similarly situated individuals' Private Information.

## PARTIES

6.     Plaintiff Judith Wilson is a Florida citizen and resides in Deland, Florida.

7.     Defendant PSC is a Delaware corporation and maintains its headquarters and principal place of business at 15 Wayside Road, 4th Floor, Burlington, Massachusetts 01803. PSC offers the service MOVEit, which experienced the Data Breach underlying Plaintiff's claims.

8.     Defendant Humana is a Delaware corporation and maintains its headquarters and principal place of business at 500 W. Main St., Louisville, Kentucky 40202.

9.     Defendant CWHH is a limited liability company and maintains its headquarters and principal place of business at 3350 Riverwood Parkway, Suite 1400, Atlanta, Georgia, 30339.

10.     Trilogy is a Delaware corporation and maintains its headquarters and principal place of business at 1645 Palm Beach Lakes Boulevard, Suite 1100, West Palm Beach, Florida 33401. Trilogy uses Kirkland & Ellis as one of the company's law firms.

11.     Kirkland & Ellis is a limited liability partnership with a principal place of business at 333 West Wolf Point Plaza, Chicago, Illinois 60654. Kirkland utilizes the MOVEit software and experienced the Data Breach while holding Plaintiff's data.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000) and is a class action in which one or more Class members are citizens of states different from Defendants.

13.     Absent the Court's MDL Order No. 12 (Direct Filing Order), Plaintiff Wilson would have filed her action in the Southern District of Florida. The Southern District of Florida has personal jurisdiction over Defendant Trilogy because it maintains its principal place of business in the District. Defendant Trilogy is authorized to conduct business in this District and is subject to general personal jurisdiction in Florida. Additionally, the Southern District of Florida has personal jurisdiction over Defendants PSC, Humana, CWHH, and Kirkland because these Defendants have committed acts within the Southern District of Florida giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. The Southern District of Florida is the proper venue for this case pursuant to 18 U.S.C. § 1391(b)(1) because Defendant Trilogy's principal place of business is in the District; it is also proper pursuant to 18 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

14.     The Omnibus Set of Additional Pleading Facts (ECF No. 908) sets out the nature of Defendant PSC's business, including its MOVEit software.

011175-35/2647715 V1

*Nature of Defendants' Businesses*

15.     Defendant Humana is a major healthcare conglomerate based in Louisville, Kentucky. Its revenue reached $95.6 billion in 2023, with $3.1 billion in profits.[3]

16.     Defendant CWHH is a subsidiary of Humana. With over 350 locations across 38 states, it provides care to more than 350,000 patients annually across a wide range of home health services.[4]

17.     Defendant Trilogy offers a wide variety of home health services to over 4,700 patients in Florida,[5] with 11 different locations across the state.[6] According to its website, its services include skilled nursing, physical therapy, occupational therapy, and speech-language pathology, as well as access to medical social workers and home health aides.[7]

18.     Defendant Trilogy's website links to CWHH's Notice of Privacy Practices[8] and Humana's Privacy Policy.[9]

19.     The Notice of Privacy Practices states in bold, capital letters that CWHH (and Trilogy) "HAVE A LEGAL DUTY TO SAFEGUARD YOUR PROTECTED HEALTH INFORMATION (PHI)."[10] It specifies that this duty extends to any information that "can be used to identify you that we have created or received about your past, present, or future health or medical

---

[3] *Humana*, FORBES, https://www.forbes.com/companies/humana/?sh=77840bfe4390 (last visited May 16, 2024).
[4] CenterWell Home Health, *About: Overview*, LINKEDIN, https://www.linkedin.com/company/centerwell-home-health/about/ (last visited May 16, 2024).
[5] *Trilogy Home Healthcare, A Portfolio Company of Kinderhook Industries, Acquired by CenterWell Home Health, A Subsidiary of Humana*, EDGEMONT (Apr. 2023), https://www.edgemont.com/transactions/trilogy-home-healthcare/.
[6] *Locations*, TRILOGY HOME HEALTHCARE, https://www.trilogyhomehealthcare.com/locations (last visited May 16, 2024).
[7] *Our Services*, TRILOGY HOME HEALTHCARE, https://www.trilogyhomehealthcare.com/our-services-1 (last visited May 16, 2024).
[8] *CenterWell ACE: Notice of Privacy Practices*, CenterWell (May 1, 2023), https://www.trilogyhomehealthcare.com/_files/ugd/e5bc68_1191695195ec4dbf9cbcca05771f08b0.pdf.
[9] *Humana Privacy Policy*, Humana, https://www.trilogyhomehealthcare.com/_files/ugd/e5bc68_6aab626aa47c4a46ac0ad2fae70eb766.pdf (last visited May 16, 2024).
[10] *See CenterWell ACE*, *supra* note 6.

condition, the provision of health care to you, or the payment of this health care."[11] Moreover, the Notice acknowledges that, if "PRIVATE INFORMATION IS USED OF [sic] DISCLOSED INAPPROPRIATELY," the consumer has "the right to receive a notice following a breach of your unsecured PHI"—and promises to send such a notice "in a timely manner."[12]

20.     The Privacy Policy states that Humana (and Trilogy) "respect the importance of privacy" and "are committed to maintaining the highest level of confidentiality with all of the information we receive from you."[13]

21.     On May 1, 2023, Humana's CWHH acquired Trilogy from Kinderhook Industries, LLC.[14] The companies heralded the sale as an opportunity for CWHH and Trilogy to "deliver best-in-class care" and "serve more people in key markets throughout Florida."[15]

22.     Upon information and belief, Trilogy contracted with Kirkland & Ellis for legal services and representation. Indeed, Kirkland & Ellis served as legal counsel to Trilogy during its acquisition by Humana's CWHH.[16] At some point during this relationship, Trilogy transferred files connected to a legal matter to Kirkland through the MOVEit tool used by the firm. These files included a wide array of Private Information.

23.     Between May 27 and 31, 2023, an unauthorized third party accessed the MOVEit tool and obtained these files (the "Data Breach").

24.     Kirkland & Ellis is an international law firm known for both litigation and transactional work. With 11 domestic offices and eight international offices, Kirkland employs

---

[11] *Id.*
[12] *Id.*
[13] *See Humana Privacy Policy, supra* note 7.
[14] Press Release, Kinderhook Industries, Kinderhook Industries Sells Trilogy Home Healthcare to CenterWell Home Health (May 1, 2023), https://www.kinderhook.com/press-release/kinderhook-industries-sells-trilogy-home-healthcare-to-centerwell-home-health/.
[15] *Id.*
[16] *Id.*

between 3500-4000 attorneys.[17] It is the nation's top grossing law firm, with $7.208 billion in gross revenue for 2023.[18]

25.    Kirkland's Cybersecurity & Data Privacy Group "focuses on the evolving business, technological and legal issues relating to the security and privacy of networks and data."[19] The firm boasts its "deep understanding" and "extensive expertise on matters including application of . . . U.S. and international data breach notification laws; . . . U.S. Health Insurance Portability and Accountability Act (HIPAA); . . .U.S. FTC Act and related regulations; . . . and other statutes applicable to evolving issues in cybersecurity and data privacy."[20]

26.    Additionally, Kirkland states in its online privacy policy that it "consider[s] the protection of Personal Data to be a sound business practice, and to that end [it] employ[s] commercially appropriate organizational, physical, technical, and procedural safeguards and measures to protect your Personal Data in our possession or under our control, to the extent possible, from unauthorized or accidental access and improper use."[21]

27.    Soon after the Data Breach occurred, the responsible ransomware group, cl0p, gave impacted companies until June 14, 2023, to contact them to negotiate payment for data.[22]  Cl0p began releasing the names of affected companies on the deadline day, and threatened to publish the stolen data by June 21, 2023, if the companies failed to negotiate.[23] Kirkland's name did not

---

[17] *Kirkland & Ellis*, VAULT, https://vault.com/company-profiles/law/kirkland-ellis (last visited May 16, 2024).
[18] Roy Strom, *Kirkland Leaves Rivals in Dust in Big Law's Great Growth Race*, BLOOMBERG LAW (Apr. 4, 2024, 4:00AM), https://news.bloomberglaw.com/business-and-practice/kirkland-leaves-rivals-in-dust-in-big-laws-great-growth-race.
[19] *Cybersecurity & Data Privacy*, KIRKLAND & ELLIS, https://www.kirkland.com/services/practices/intellectual-property/cybersecurity-data-privacy (last visited May 16, 2024).
[20] *Id.*
[21] *Privacy Policy*, KIRKLAND & ELLIS, https://www.kirkland.com/privacy-and-disclaimers (last visited May 16, 2024).
[22] Rebecca Harpur, *What We Know About the MOVEit Exploit and Ransomware Attacks*, BLACKFOG (June 22, 2023), https://www.blackfog.com/what-we-know-about-the-moveit-exploit/.
[23] *Id.*

make the June 14 list. But by late June 2023, cl0p had posted Kirkland as one of the organizations affected by the Data Breach.[24]

28.     Despite Kirkland's self-described expertise in breach notification and compliance, it did not notify Trilogy that the Data Breach impacted its files until October 26, 2023. And Trilogy did not notify affected consumers until early March 2024—nearly a full year after the Data Breach occurred.

29.     At all relevant times, Defendants knew, or should have known, the Private Information of individuals whose information was transferred using MOVEit—such as Plaintiff and the Class members—were a target for malicious actors, as described in the Omnibus Set of Additional Pleading Facts (ECF No. 908). Despite such knowledge, Defendants failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' information from cyber-attacks that Defendants should have anticipated and guarded against.

30.     Defendants' lack of oversight marked a failure to comply with Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. This statute prohibits unfair acts or practices, and permits the FTC to bring enforcement actions against healthcare providers and partners like Defendants who have failed to adequately and reasonably protect customer data through appropriate data security practices. *See, e.g.*, *In the Matter of LabMD, Inc.*, *A Corp.*, 2016-2 Trade Cas. (CCH) § 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016).

31.     Defendants' failure also marked a failure to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of

---

[24] Raphael Satter, *US Health Department, Law Firms Latest Hit in Wide-Ranging Attack*, REUTERS (June 29, 2023, 12:19PM), https://www.reuters.com/world/us/us-health-department-law-firms-reportedly-latest-hit-wide-ranging-hack-2023-06-28/.

Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. Defendants Humana, CWHH, and Trilogy are required to comply with these rules as covered entities under HIPAA (45 C.F.R. § 160.103). Defendants are also subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"), 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

32.     Moreover, Defendants' failure to protect consumer data, including sensitive Private Information, directly led to the Data Breach described above and outlined in more depth in the Omnibus Set of Additional Pleading Facts (ECF No. 908).

***Factual Allegations Pertaining to Plaintiff***

33.     Plaintiff Judith Wilson is a resident and citizen of the state of Florida and resides in Deland, Florida.

34.     Plaintiff received a letter from Trilogy Home Healthcare dated March 4, 2024, confirming that her Private Information were impacted by the Data Breach and accessed by the cybercriminals who invaded Defendants' systems.

35.     In the notice letter, Trilogy specified that the breached files "contained personal information . . . including name, contact information, date of birth, Social Security and other government-issued ID numbers, financial account information, health information and health insurance information."

36.     Plaintiff Wilson has never had a relationship with Trilogy Home Healthcare, nor has she received home health care.

37.     Plaintiff Wilson's late husband, Robert Wilson, did receive home health care during approximately the last four weeks of his life. Mr. Wilson worked for the National Security Agency

("NSA") for nearly 40 years and passed away on May 9, 2021. The couple shared health insurance through the Federal Blue Cross Blue Shield program that Mr. Wilson received as a retired government employee. Plaintiff Wilson kept this health insurance after Mr. Wilson's death, including the same insurance identification number. The couple's insurance information included information about Mr. Wilson's employment at the NSA. Plaintiff Wilson fears that, because the Data Breach affected health insurance information and medical files, Mr. Wilson's employment files—which were classified—may have been affected. Plaintiff Wilson also fears that the Data Breach is indicative of widespread data security failures by Defendants, which may have put this classified information at risk for several years leading up to the Data Breach.

38.     The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendants have still not fully informed her of key details about the Data Breach's occurrence. Although Trilogy stated that "[t]he types of affected personal information varied by individual," it failed to inform Plaintiff Wilson which types of her Private Information were breached. It merely instructed her to "[r]emain [v]igilant." Plaintiff Wilson must now assume that her Private Information was breached if it falls into any of the data types Trilogy listed.

39.     Plaintiff Wilson has spent considerable time, effort, and money, and  she has taken (and continues to take) considerable precautions to monitor for and protect against the unauthorized dissemination of her Private Information. To date, she has spent approximately 1-2 hours signing up for credit monitoring, researching the breach, speaking with her lawyers, and otherwise dealing with the fallout from the Data Breach.

40.     As a result of Defendants' Data Breach, Plaintiff Wilson has suffered—or is at an increased risk of suffering—injury and/or damages, including but not limited to, the unauthorized

use of her Private Information, heightened threat of identity theft and general mitigation efforts spent on monitoring her credit and for identity theft; time and expenses spent scrutinizing medical records, bank statements, credit card statements, and credit reports for fraudulent transactions/conduct; time and expenses spent monitoring medical records and bank accounts for fraudulent activity; loss in value of her personal data; lost property in the form of her compromised Private Information; and injury to her privacy. Additionally, because of Defendants' Data Breach, Plaintiff Wilson now faces a substantial risk that unauthorized third parties will further misuse her Private Information. That is especially so because the types of Private Information exposed during the Data Breach are highly sensitive and can be misused for substantially injurious forms of identity theft and/or fraud. Plaintiff Wilson has therefore (1) suffered, or is at an increased risk of suffering, unauthorized use of her Private Information such that she has suffered concrete injury; (2) suffered concrete injury in fact based on the material risk of future misuse of her Private Information and concrete harm by exposure to this risk; and (3) experienced separate concrete, present harm caused by her exposure to the risk of future harm because she lost time she spent taking protective measures that would have otherwise been put to other productive use and lost opportunity costs associated with the time and effort she expended addressing future consequences of the Data Breach.

41.     Plaintiff Wilson experienced all of the foregoing harm and injury as a direct result of the Data Breach. The monetary relief sought herein by Plaintiff Wilson would compensate her for the foregoing redressable injuries. Further, Plaintiff Wilson seeks injunctive relief to redress the foregoing injuries and harm, including, but not limited to, requiring that Defendants take steps to monitor for, protect, and/or prevent misuse of Plaintiff Wilson's Private Information impacted

by the Data Breach, as well as requiring that Defendants take steps to enact adequate data privacy/security practices.

## **CLASS ALLEGATIONS**

42.     Plaintiff Wilson brings this action on behalf of herself and on behalf of the Nationwide Class, defined as: All residents of the United States whose Private Information was compromised as a result of the Data Breach.

43.     The foregoing classes are referred to herein, collectively, as the "Class." Excluded from the Class are: (1) the judges presiding over the action; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and their current or former officers and directors; (3) persons who properly opt out; and (4) the successors or assigns of any such excluded persons.

44.     **Numerosity**: Class members are so numerous that their individual joinder is impracticable, as the proposed Class includes at least 4,700 members who are geographically dispersed.

45.     **Typicality**: Plaintiff's claims are typical of Class members' claims. Plaintiff and all Class members were injured through Defendants' uniform misconduct, and Plaintiff's claims are identical to the claims of the Class members she seeks to represent.

46.     **Adequacy**: Plaintiff's interests are aligned with the Class she seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and her counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

011175-35/2647715 V1

47.     **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class members' claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for individual Class members to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

48.     **Commonality and Predominance:** The following questions common to all Class members predominate over any potential questions affecting individual Class members:

a.  Whether Defendants had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' Private Information from unauthorized access and disclosure;

b.  Whether Defendants failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' Private Information;

c.  Whether Defendants breached their duties to protect Plaintiff's and Class members' Private Information;

d.  Whether Defendants violated the statutes alleged herein;

e.  Whether Plaintiff and all other Class members are entitled to damages and the measure of such damages and relief.

011175-35/2647715 V1

49.     Given that Defendants engaged in a common course of conduct as to the Plaintiff and the Class, similar or identical injuries and common law violations are involved, and common questions outweigh any potential individual questions.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF
### Negligence
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against All Defendants)**

50.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

51.     Defendants owed duties to Plaintiff and the Class members to exercise reasonable care in safeguarding and protecting their Private Information in Defendants' possession, custody, or control.

52.     Defendants knew the risks of collecting and storing Plaintiff's and the Class members' Private Information and the importance of maintaining secure systems. Defendants knew of the many data breaches that targeted healthcare providers in recent years.

53.     Given the nature of Defendants' businesses, the sensitivity and value of the Private Information they maintain, and the resources at their disposal, Defendants should have identified the vulnerabilities to their systems and prevented the Data Breach from occurring.

54.     Defendants breached their duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Private Information entrusted to them—including Plaintiff's and Class members' Private Information.

55.     It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' Private Information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' Private Information to unauthorized individuals.

56.     But for Defendants' negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their Private Information would not have been compromised.

57.     As a result of Defendants' above-described wrongful actions, inactions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and the Class members have suffered, and will continue to suffer, economic damages and other injuries and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft and medical theft—a risk that justifies expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) loss of the value of their Private Information, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Negligence Per Se**
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against All Defendants)**

58.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

011175-35/2647715 V1

59.     Defendants' duties arise from, inter alia, the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules").

60.     Defendants' duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to employ reasonable measures to protect and secure Private Information.

61.     Defendants violated HIPAA Privacy and Security Rules and Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and the Class members' Private Information, and by failing to comply with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information they obtain and store, and the foreseeable consequences of a data breach involving Private Information including, specifically, the substantial damages that would result to Plaintiff and the other Class members. Defendants' violations of HIPAA Privacy and Security Rules and Section 5 of the FTCA constitute negligence per se.

62.     Plaintiff and Class members are within the class of persons that HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to protect.

63.     The harm occurring as a result of the Data Breach is the type of harm HIPAA Privacy and Security Rules and Section 5 of the FTCA were intended to guard against.

64.     It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' Private Information by failing

to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' Private Information to unauthorized individuals.

65.     The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Defendants' violations of HIPAA Privacy and Security Rules and Section 5 of the FTCA. Plaintiff and Class members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, inter alia: (i) a substantially increased risk of identity theft and medical theft—a risk justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) loss of the value of their Private Information, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of medical identity theft they face and will continue to face.

### THIRD CLAIM FOR RELIEF
**Breach of Third-Party Beneficiary Contract**
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against Defendants PSC and Kirkland & Ellis)**

66.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

67.     Upon information and belief, PSC entered into contracts with its government and corporate customers to provide secure file transfer services to them; services that included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was entrusted to it.

011175-35/2647715 V1

68.     Upon information and belief, Kirkland & Ellis entered into contracts with its government and corporate customers to provide legal services; services that included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was entrusted to it.

69.     Such contracts were made expressly for the benefit of Plaintiff and the Class, as it was their Private Information that Defendants agreed to receive, store, utilize, transfer, and protect through their services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiff and the Class was the direct and primary objective of the contracting parties and Plaintiff and Class members were direct and express beneficiaries of such contracts.

70.     Defendants knew or should have known that if they were to breach these contracts with their customers, Plaintiff and Class members would be harmed.

71.     Defendants breached their contracts with customers by, among other things, failing to adequately secure Plaintiff and Class members' Private Information, and, as a result, Plaintiff and Class members were harmed by Defendants' failure to secure their Private Information.

72.     As a direct and proximate result of Defendants' breach, Plaintiff and Class members are at a current and ongoing risk of identity theft, and Plaintiff and Class members sustained incidental and consequential damages including: (i) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (ii) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (iii) financial "out of pocket" costs incurred due to actual identity theft; (iv) loss of time incurred due to actual identity theft; (v) loss of time due to increased spam and targeted marketing emails; (vi) loss of value of their Private Information; (vii) future costs of identity theft monitoring; (viii) and the continued risk to their Private Information, which remains in Defendants' control, and

which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class members' Private Information.

73.     Plaintiff and Class members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

74.     Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

## FOURTH CLAIM FOR RELIEF
### Breach of Covenant of Good Faith and Fair Dealing
### (Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against All Defendants)

75.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

76.     As described above, Plaintiff and Class members were third-party beneficiaries under the contracts with and/or between Defendants.

77.     Inherent in every contract is that implied covenant of good faith and fair dealing, which Defendants violated when they failed to maintain reasonable data security protocols, leading to the disclosure of Plaintiff's and Class members' Private Information for purposes not required or permitted under the contracts.

78.     Plaintiff and Class members have been injured by Defendants' conduct, incurring the harms and injuries arising from the Data Breach now and in the future and are entitled to the losses and damages they have sustained as a direct and proximate result thereof, as well as their costs and attorneys' fees incurred in this action.

**FIFTH CLAIM FOR RELIEF**
**Invasion of Privacy (Intrusion Upon Seclusion)**
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class Against**
**All Defendants)**

79.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

80.     Defendants intentionally intruded upon the solitude, seclusion and private affairs of Plaintiff and Class members by intentionally configuring their systems in such a way that left Defendants vulnerable to malware/ransomware attack, thus permitting unauthorized access to their systems, which compromised Plaintiff's and Class members' Private Information.

81.     Defendants' conduct is especially egregious and offensive as they failed to have adequate security measures in place to prevent, track, or detect in a timely fashion unauthorized access to Plaintiff's and Class members' Private Information.

82.     At all times, Defendants were aware that Plaintiff's and Class members' Private Information in their possession contained highly sensitive and confidential Private Information.

83.     Plaintiff and Class members have a reasonable expectation of privacy in their Private Information, which also contains highly sensitive medical information.

84.     Defendants intentionally configured their systems in such a way that stored Plaintiff's and Class members' Private Information to be left vulnerable to malware/ransomware attack, without regard for Plaintiff's and Class members' privacy interests.

85.     The disclosure of the sensitive and confidential Private Information of thousands of consumers was highly offensive to Plaintiff and Class members because it violated expectations of privacy that have been established by general social norms, including by granting access to information and data that is private and would not otherwise be disclosed.

011175-35/2647715 V1

86.     Defendants' conduct would be highly offensive to a reasonable person in that it violated statutory and regulatory protections designed to protect highly sensitive information, in addition to social norms. Defendants' conduct would be especially egregious to a reasonable person as Defendants publicly disclosed Plaintiff's and Class members' sensitive and confidential Private Information without their consent, to an "unauthorized person," i.e., hackers.

87.     As a result of Defendants' actions, Plaintiff and Class members have suffered harm and injury, including but not limited to, an invasion of their privacy rights.

88.     Plaintiff and Class members have been damaged as a direct and proximate result of Defendants' intrusion upon seclusion and are entitled to just compensation.

89.     Plaintiff and Class members are entitled to appropriate relief, including compensatory damages for the harm to their privacy, loss of valuable rights and protections, and heightened stress, fear, anxiety and risk of future invasions of privacy.

## SIXTH CLAIM FOR RELIEF
**Invasion of Privacy (Public Disclosure of Private Facts)**
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against all Defendants)**

90.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

91.     Plaintiff and Class members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

92.     As a result of Defendants' conduct, publicity was given to Plaintiff's and Class members' Private Information, which necessarily includes matters concerning their private life.

93.     A reasonable person of ordinary sensibilities would consider the publication of Plaintiff's and Class members' Private Information to be highly offensive.

94.     Plaintiff's and Class members' Private Information is not of legitimate public concern and should remain private.

95.     As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiff and Class members are at a current and ongoing risk of identity theft and sustained compensatory damages including: (a) invasion of privacy; (b) financial "out of pocket" costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (d) financial "out of pocket" costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) loss of time due to increased spam and targeted marketing emails; (g) loss of value of their Private Information; (h) future costs of identity theft monitoring; (i) anxiety, annoyance and nuisance, and (j) the continued risk to their Private Information, which remains in Defendants' possession, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class members' Private Information.

96.     Plaintiff and Class members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

97.     Plaintiff and Class members are also entitled to injunctive relief requiring Defendants to, *e.g.*, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class members.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against All Defendants)**

98.     Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

99.     Plaintiff and Class members have both a legal and equitable interest in their Private Information that was collected by, stored by, and maintained by Defendants—thus conferring a benefit upon Defendants—that was ultimately compromised by the Data Breach.

100.     Defendants accepted or had knowledge of the benefits conferred upon them by Plaintiff and Class members. Defendants also benefitted from the receipt of Plaintiff's and Class members' Private Information.

101.     Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff' and Class members' Private Information; these cost savings increased the profitability of the services.

102.     Upon information and belief, instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

103.     Under the principles of equity and good conscience, Defendants should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class members because Defendants failed to implement appropriate data management and security measures that are mandated by federal, state, and local laws, as well as industry standards.

104.    Defendants should be compelled to provide, for the benefit of Plaintiff and Class members, all unlawful proceeds received by them as a result of the conduct and Data Breach alleged herein.

**EIGHTH CLAIM FOR RELIEF**
**Violation of Massachusetts General Laws, Chapter 93A**
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class against Defendant PSC)**

105.    Plaintiff realleges and incorporates by reference preceding paragraphs 1 through 47 as if fully set forth herein.

106.    M.G.L. ch. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. ch. 93A § 9 permits any consumer injured by a violation of M.G.L. ch. 93A § 2 to bring a civil action, including a class action, for damages and injunctive relief.

107.    Plaintiff Wilson alleges that Defendant PSC committed unfair business acts and/or practices in violation of M.G.L. ch. 93A §§ 2 and 9.

108.    Defendant PSC knew or should have known of the inherent risks in experiencing a data breach if PSC failed to maintain adequate systems and processes for keeping Plaintiff Wilson's and Class members' Private Information safe and secure. Only Defendant PSC was in a position to ensure that their systems were sufficient to protect against harm to Plaintiff and the Class resulting from a data security incident such as the Data Breach; instead, PSC failed to implement such safeguards.

109.    Defendant PSC's own conduct also created a foreseeable risk of harm to Plaintiff and Class members and their Private Information. Defendant PSC's misconduct included failing to adopt, implement, and maintain the systems, policies, and procedures necessary to prevent the Data Breach.

011175-35/2647715 V1

110.     Defendant PSC acknowledges its conduct created actual harm to Plaintiff and Class members because PSC instructed them to monitor their accounts for fraudulent conduct and identity theft.

111.     Defendant PSC knew, or should have known, of the risks inherent in disclosing, collecting, storing, accessing, and transmitting Private Information and the importance of adequate security because of, inter alia, the prevalence of data breaches.

112.     Defendant PSC failed to adopt, implement, and maintain fair, reasonable, or adequate security measures to safeguard Plaintiff Wilson's and Class members' Private Information, failed to recognize in a timely manner the Data Breach, and failed to notify Plaintiff and Class members in a timely manner that their Private Information was accessed in the Data Breach.

113.     These acts and practices are unfair in material respects, offend public policy, are immoral, unethical, oppressive and unscrupulous and violate 201 CMR 17.00 and M.G.L. ch. 93A § 2.

114.     As a direct and proximate result of Defendant PSC's unfair acts and practices, Plaintiff and the Class have suffered injury and/or will suffer injury and damages, including but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and/or fraudulent use of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of Defendant's Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from unemployment and/or tax fraud and identity theft; (v) costs

011175-35/2647715 V1

associated with placing freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession (and/or to which Defendant continues to have access) and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in their continued possession; and, (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of disclosed Private Information.

115.     Neither Plaintiff nor the other Class members contributed to Defendant's Data Breach.

116.     Plaintiff sent a demand for relief, in writing, to Defendant on June 6, 2024, prior to filing this complaint. Multiple plaintiffs in consolidated actions have sent[25]—or alleged in their complaints that they would send[26]—similar demand letters as required by M.G.L. ch. 93A § 9. Plaintiff has not received a written tender of settlement that is reasonable in relation to the injury actually suffered by Plaintiff and the Class.

---

[25] *See, e.g.*, *Ghalem, et al. v. Progress Software Co., et al.*,     23-cv-12300 (D. Mass.), at ECF No. 1, ¶ 213 ("A demand identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered was mailed or delivered to Defendants at least thirty days prior to the filing of a pleading alleging this claim for relief").

[26] In all of the following cases (among others), plaintiffs indicated that they were going to send similar demand letters: *Allen, et al. v. Progress Software Corp.*, 23-cv-11984 (D. Mass.); *Anastasio v. Progress Software Corp., et al.*, 23-cv-11442 (D. Mass.); *Arden v. Progress Software Corp., et al.*, 23-cv-12015 (D. Mass.); *Boaden v. Progress Software Corp., et al.*, 23-cv-12192 (D. Mass.); *Brida v. Progress Software Corp., et al.*, 23-cv-12202 (D. Mass.); *Casey v. Progress Software Corp., et al.*, 23-cv-11864 (D. Mass.); *Constantine v. Progress Software Corp., et al.*, 23-cv-12836 (D. Mass.); *Daniels v. Progress Software Corp., et al.*, 23-cv-12010 (D. Mass.); *Doe v. Progress Software Corp., et al.*, 23-cv-1933 (D. Md.); *Ghalem, et al. v. Progress Software Corp., et al.*, 23-cv-12300 (D. Mass.); *Kennedy v. Progress Software Corp., et al.*, 23-cv-12275 (D. Mass.); *Kurtz v. Progress Software Corp., et al.*, 23-cv-12156 (D. Mass.); *McDaniel, et al. v. Progress Software Corp., et al.*, 23-cv-11939 (D. Mass.); *Pilotti-Iulo v. Progress Software Corp., et al.*, 23-cv-12157 (D. Mass.); *Pulignani v. Progress Software Corp., et al.*, 23-cv-1912 (D. Md.); *Siflinger, et al. v. Progress Software Corp., et al.*, 23-cv-11782 (D. Mass.); *Tenner v. Progress Software Corp.*, 23-cv-11412 (D. Mass.); *Truesdale v. Progress Software Corp., et al.*, 23-cv-1913 (D. Md.).

117.     Based on the foregoing, Plaintiff and the Class members are entitled to all remedies available pursuant to M.G.L ch. 93A, including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty-five dollars per violation, whichever is greater, double or treble damages, attorneys' fees and other reasonable costs.

118.     Pursuant to M.G.L. ch. 231, § 6B, Plaintiff and Class members are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and Class members are entitled to interest in an amount according to proof.

## NINTH CLAIM FOR RELIEF
**Declaratory and Injunctive Relief**
**(Brought by Plaintiff Wilson individually and on behalf of the Nationwide Class)**

119.     Plaintiff realleges and incorporates by reference  preceding paragraphs 1 through 47 as if fully set forth herein.

120.     Plaintiff pursues this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

121.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal statutes described in this Complaint.

122.     An actual controversy has arisen and exists between Plaintiff and Class members, on the one hand, and Defendants on the other hand, concerning the Data Breach and Defendants' failure to protect Plaintiff's and Class members' Private Information, including with respect to the issue of whether Defendants took adequate measures to protect that information. Plaintiff and the Class are entitled to judicial determination as to whether Defendants have performed and are

adhering to all data privacy obligations as required by law or otherwise to protect Plaintiff's and Class members' Private Information from unauthorized access, disclosure, and use.

123.    The Court should also issue prospective injunctive relief requiring Defendants to employ adequate security practices consistent with law and industry standards to protect Plaintiff's and Class members' Private Information.

124.    Defendants still control the Private Information of Plaintiff and the Class members.

125.    To Plaintiff's knowledge, Defendants have made no announcement that they have changed their data or security practices relating to the Private Information.

126.    To Plaintiff's knowledge, Defendants have made no announcement or notification that they have remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

127.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach. The risk of another such breach is real, immediate, and substantial.

128.    As described above, actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiff and Class members. Further, Plaintiff and Class members are at risk of additional or further harm due to the exposure of their Private Information and Defendants' failure to address the security failings that led to such exposure.

129.    There is no reason to believe that Defendants' employee training and security measures are any more adequate now than they were before the breach to meet Defendants' contractual obligations and legal duties.

011175-35/2647715 V1

130.     The hardship to Plaintiff and Class members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Among other things, if another data breach occurs affecting Defendants, Plaintiff and Class members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

131.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the additional injuries that would result to Plaintiff and Class.

132.     Plaintiff and Class members seek a declaration (i) that Defendants' existing data security measures do not comply with their legal and contractual obligations and duties of care to provide adequate data security; and (ii) that to comply with their legal and contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to, the following:

    a.   engage internal security personnel to conduct testing, including audits on Defendants' systems, on a periodic basis, and promptly correct any problems or issues detected by such third-party security auditors;

    b.   engage third-party security auditors and internal personnel to run automated security monitoring;

    c.   audit, test, and train their security personnel and employees regarding any new or modified data security policies and procedures;

    d.   purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for their provision of services;

e.   conduct regular database scanning and security checks; and

f.   routinely and continually conduct internal training and education to inform internal security personnel and employees how to safely share and maintain highly sensitive Private Information, including but not limited to, PII.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of the Class, respectfully requests that the Court grant the following relief:

A.   Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as Class Representative and undersigned counsel as Class Counsel;

B.   Find in favor of Plaintiff and the Class on all counts asserted herein;

C.   Award Plaintiff and the Class monetary damages, including actual and statutory, compensatory damages, general, consequential, nominal, and punitive damages, to the maximum extent as allowed by law;

D.   Award restitution and all other forms of equitable monetary relief;

E.   Award equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein regarding to the misuse or disclosure of the private information of Plaintiff and Class members, and from refusing to issue prompt, complete, and accurate disclosure to Plaintiff and Class members;

F.   Award injunctive relief as permitted by law or equity to assure that Class members have an effective remedy, and to protect the interests of Plaintiff and Class members, including but not limited to an order:

i.   requiring Defendants to protect, including through encryption, all data collected through the course of their business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

ii.   requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and Class members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

iii.   requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the private information of Plaintiff and Class members;

iv.   prohibiting Defendants from maintaining the Private Information of Plaintiff and Class members on a cloud-based database;

v.   requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vi.   requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii.   requiring Defendants to audit, test, and train their security personnel regarding any new or modified procedures;

011175-35/2647715 V1

viii. requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

ix. requiring Defendants to conduct regular database scanning and securing checks;

x. requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate;

xi. requiring Defendants to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii. requiring Defendants to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xiii. requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.  requiring Defendants to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.  requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers;

xvi.  requiring, for a period of 10 years, the appointment of a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

xvii.  requiring Defendants to implement multi-factor authentication requirements, if not already implemented;

xviii.  requiring Defendants' employees to change their passwords on a timely and regular basis, consistent with best practices.

G.    Award disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts;

H.    Award a mandatory injunction requiring that Defendants provide notice to each member of the Class relating to the full nature and extent of the Data Breach and the disclosure of Private Information to unauthorized persons.

I.    Order Defendants to purchase or provide funds for lifetime credit monitoring and identify theft insurance to Plaintiff and Class members;

011175-35/2647715 V1

J.      Order Defendants to pay the costs in notifying Class members about the judgment and administering the claims process;

K.      Award Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowed by law;

L.      Grant Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial;

M.      Award Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable;

N.      Distribute any monies recovered on behalf of Class members or the general public via fluid recovery or cy pres recovery where necessary and as applicable to prevent Defendant from retaining benefits of their wrongful conduct;

O.      Award Plaintiff and the Class such other favorable relief as allowable under law or at equity; and

P.      Award such other and further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: June 7, 2024                              Respectfully submitted,


                                                 */s/ Karen H. Riebel*
                                                 Karen H. Riebel
                                                 **LOCKRIDGE GRINDAL NAUEN PLLP**
                                                 100 Washington Ave. S., Ste. 2200
                                                 Minneapolis, MN  55401
                                                 Tel:  (612) 339-6900
                                                 *khriebel@locklaw.com*

                                                 *Plaintiff's Liaison & Coordinating Counsel*

011175-35/2647715 V1

E. Michelle Drake
**BERGER MONTAGUE, PC**
1229 Tyler St., NE, Ste. 205
Minneapolis, MN 55413
Tel:  (612) 594-5933
*emdrake@bm.net*

Gary F. Lynch
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Fl.
Pittsburgh, PA 15222
Tel:  (412) 322-9243
*Gary@lcllp.com*

Douglas J. McNamara
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, 5th Fl.
Washington, DC  20005
Tel:  (202) 408-4600
*dmcnamara@cohenmilstein.com*

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Ste. 500
Philadelphia, PA  19106
Tel:  (215) 592-1500
*cshaffer@lfsblaw.com*

*Plaintiff's Lead Counsel*

011175-35/2647715 V1